UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MELVIN W,[1]<br><br>            Plaintiff,<br><br>   vs.<br><br>DR. KILOLO KIJAKAZI,  Acting<br>Commissioner of Social Security,<br><br>            Defendant. | CIV. 20-5050-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff filed a complaint appealing the final decision of Dr. Kilolo

Kijakazi,[2] Acting Commissioner of the Social Security Administration, finding

him not disabled.  (Docket 1).  Defendant denies plaintiff is entitled to benefits.

(Docket 10).  For the reasons stated below, plaintiff's motion to reverse the

---

[1]The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders.  For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion.  This includes the names of non-governmental parties appearing in case captions.

[2]Dr. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Fed. R. Civ. P. 25(d), Dr. Kijakazi is automatically substituted for Andrew Saul as the defendant in all pending social security cases.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Dr. Kijakazi will be referred to as the "Commissioner" for the remainder of this order.

decision of the Commissioner (Docket 19) is granted and defendant's motion to affirm the decision of the Commissioner (Docket 20) is denied.

## FACTUAL AND PROCEDURAL HISTORY

The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 12). The parties filed their JSMF. (Docket 16). The parties' JSMF is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order.

On April 10, 2017, plaintiff applied for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, respectively. (Docket 16 ¶ 1). He alleged an onset of disability date of March 1, 2017. Id. On November 8, 2019, an ALJ issued a decision finding plaintiff not disabled from March 1, 2017, through the date of the ALJ's decision. See id. ¶ 3; see also Docket 13 at pp. 16-25.[3] Plaintiff sought review from the Appeals Council of the ALJ's decision and submitted additional evidence. (Docket 16 ¶ 4). On June 23, 2020, the Appeals Council denied plaintiff's request for review. Id. ¶ 5. The ALJ's April 8, 2020, decision constitutes the final decision of the Commissioner of the Social Security Administration. Id. It is from this decision which plaintiff timely appeals.

---

[3]The court cites to the page of the document as filed in CM/ECF as opposed to the page of the administrative record.

2

The issue before the court is whether the ALJ's decision plaintiff was not "under a disability, as defined in the Social Security Act, from March 1, 2017, through [November 8, 2019]" is supported by substantial evidence in the record as a whole.  (Docket 13 at p. 24) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed v. Barnhart, 399 F.3d

3

917, 920 (8th Cir. 2005) (quoting <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "  <u>Reed</u>, 399 F.3d at 920 (quoting <u>Shannon v. Chater</u>, 54 F.3d 484, 486 (8th Cir. 1995)).  Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  See <u>Smith</u>, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to disability insurance benefits under Title II or supplemental security income under Title XVI.  20 CFR § 404.1520(a) and 416.920(a).[4]  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  <u>Id.</u>  The five-step sequential evaluation process is:

---

[4]The criteria under 20 CFR § 416.920 are the same as those under 20 CFR § 404.1520.  <u>Boyd v. Sullivan</u>, 960 F.2d 733, 735 (8th Cir. 1992).  All further references will be to the regulations governing disability insurance benefits, unless otherwise specifically indicated.

(1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (Docket 13 at pp. 18-24).

**STEP ONE**

At step one, the ALJ determined plaintiff "has not engaged in substantial gainful activity since March 1, 2017, the . . . alleged onset [of disability]." Id. at p. 18 (bold omitted). Plaintiff does not challenge this finding. (Docket 19).

**STEP TWO**

At step two, the ALJ identified plaintiff suffered from the following severe impairments:

[C]oronary artery disease (status post-acute myocardial infarction and status post stenting); methamphetamine-associated dilated cardiomyopathy (with chronic congestive heart failure with systolic and diastolic dysfunction); moderate mitral valve regurgitation, mild pulmonic valve regurgitation, mild to moderate tricuspid valve regurgitation; moderate to severe pulmonary hypertension; and history of right shoulder injuries.

(Docket 13 at p. 18) (bold omitted). Plaintiff does not challenge this finding. (Docket 19).

5

**STEP THREE**

At step three, the ALJ determined plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" Appendix 1.  (Docket 13 at p. 19) (bold omitted).  Plaintiff does not challenge this finding.  (Docket 19).

**STEP FOUR**

At step four, the ALJ found plaintiff has the residual functional capacity ("RFC") to perform "less than a full range of light work."  (Docket 13 at p. 19) (bold omitted).  Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 CFR § 404.1567(b).  Specifically, the ALJ found plaintiff

> is able to lift and/or carry twenty  pounds occasionally and  ten pounds frequently.  He can sit (with normal breaks) for a total of about six hours in an eight-hour workday and stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday.  [He] can frequently reach overhead with the right upper extremity.  He can tolerate frequent exposure to extreme cold and extreme heat.

(Docket 13 at pp. 19-20) (bold omitted).  Plaintiff does not challenge this finding.  (Docket 19).

6

**<u>STEP FIVE</u>**

The ALJ found plaintiff was unable to return to his past relevant work. (Docket 13 at p. 23).   The vocational expert ("VE") who testified at the hearing concluded plaintiff could perform the employment functions required for a tower crane operator-a light, skilled position.  <u>Id.</u> at p. 24.  The VE estimated there were approximately 20,000 to 25,000 jobs in the national economy in this position.  <u>Id.</u>; <u>see</u> <u>also</u> Docket 16 ¶ 97.   Based on this testimony, the ALJ found plaintiff was not disabled.  (Docket 13 p. 24).

Plaintiff challenges this finding.  (Docket 19).   He asserts "[t]he plain language of 42 U.S.C. § 423(d)(2)(A) provides that work which exists in the national economy means 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country.' " <u>Id.</u> at p. 2.  Plaintiff submits 20 CFR § 4041566(b) is the agency's recognition of the purpose of the language of § 423(d)(2)(A).  <u>Id.</u> at p. 5.

"Even assuming that the Commissioner must only show a significant number of jobs in the nation as a whole," plaintiff contends "20,000 to 25,000 is not significant, especially considering that the job identified—a tower crane operator—would primarily be found in densely populated urban areas and not the region of the country where [plaintiff] lives." <u>Id.</u> at p. 2.  Plaintiff argues the "Social Security regulations provide that 'isolated jobs that exist only in very limited numbers in relatively few locations outside the region where [a

7

claimant] lives are not considered work which exists in the national economy.' " Id. at p. 7 (citing 20 CFR § 416.996(b)).

The Commissioner argues 20,000 to 25,000 "jobs nationally . . . is commensurate with the number of jobs the Eighth Circuit has recognized as significant." (Docket 21 at p. 3) (referencing 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B); Weiler v. Apfel, 179 F.3d 1107, 1111 (8th Cir. 1999); Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991)). Defendant contends "the 'proper focus' " of the Act and its underlying regulations "generally must be on jobs in the national, not regional, economy." Id. at p. 4 (citing Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009)).

"Consistent with [Dressel v. Califano, 558 F.2d 504, 508-09 (8th Cir. 1977)] and [Miller v. Finch, 430 F.2d 321, 324 (8th Cir. 1970)]," the Commissioner submits "the Eighth Circuit has never held that an ALJ must specifically identify whether jobs exist in the claimant's region or several regions as opposed to simply identifying jobs in the entire national economy." Id. at p. 5. Defendant argues "[o]ther circuits . . . have found that national numbers—not regional numbers—satisfy the Commissioner's burden under the Act." Id. (referencing Raymond, 621 F.3d at 1274; Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987); Purdy v. Berryhill, 887 F.3d 7, 12, 16-17 (1st Cir. 2018); Sanchez v. Commissioner of Social Security, 705 F. App'x 95, 99 (3d Cir. 2017); Lirley v. Barnhart, 124 F. App'x 283, 284 (5th Cir. 2005); Taskila v.

Commissioner of Social Security, 819 F.3d 902, 905 (6th Cir. 2016); Gutierrez

v. Commissioner of Social Security, 740 F.3d 519, 528-29 (9th Cir. 2014)).

The Commissioner submits the legislative history of § 423(d) "reveals

Congress intended the focus to be on national, not regional, numbers, and that

the purpose of the more specific definition of 'work which exists in the national

economy' is simply to ensure that a claimant is not denied benefits based on

jobs that exist only in very limited numbers or in relatively few geographic

locations[.]"  Id. at pp. 6-7 (internal citation omitted).  Defendant argues "the

plain text [of § 423(d)(2)(A)] does not mandate that an ALJ elicit vocational

evidence, in every case, beyond national numbers."  Id. at p. 8.  "Absent

contrary evidence," the Commissioner contends "when a VE identifies a

significant number of jobs nationwide, he . . . is identifying jobs existing in

'several regions of the country' as required by . . . § 423(d)(2)(A)."  Id.

(referencing Gutierrez, 740 F.3d at 528-29).

"By mandating that the VE testify in specific 'regional terms,' " the

Commissioner argues the district court "would be removing the ALJ's ability to

apply common sense to the numbers, and instead would be imposing a

'categorial rule'—something the Supreme Court recently refused to impose on

VE testimony."  Id. at p. 9 (referencing Biestek v. Berryhill, ___ U.S. ___, 139 S.

Ct. 1148, 1157 (2019) ("Where Biestek goes wrong, at bottom, is in pressing for

a categorical rule, applying to every case in which a [VE] refuses a request for

underlying data."

In reply, plaintiff argues the District of South Dakota made it clear "the Social Security Administration can only meet [its] step five burden by producing evidence of substantial numbers of jobs in the claimant's 'regions' or in 'several regions.'" (Docket 26 at p. 1) (referencing Patton v. Berryhill, CIV. 10-5016, 2018 WL 1137057 (D.S.D. Feb. 28, 2018); Webb v. Berryhill, 294 F. Supp. 3d 824 (D.S.D. Mar. 5, 2018); Seay v. Berryhill, 5:16-CV-5096, 2018 WL 1513683 (D.S.D. Mar. 27, 2018); Porter v. Berryhill, 5:17-CV-05028, 2018 WL 2138661 (D.S.D. May 9, 2018); Hendrickson v. Berryhill, 4:17-CV-04173, 2018 WL 5984837 (D.S.D. Nov. 14, 2018); Pogany v. Berryhill, 4:18-CV-04103, 2019 WL 2870135 (D. S.D. July 3, 2019); Patrick v. Saul, 4:18-CV-04150, 2019 WL 3824254 (D.S.D. Aug. 15, 2019); Larson v. Saul, 4:18-CV-04121, 2018 WL 3823929 (D.S.D. Aug. 15, 2019); Springer v. Saul, 4:19-CV-04030, 2019 WL 4855186 (D.S.D. Oct. 1, 2019); Viessman v. Saul, 4:19-CV-04063, 2020 WL 133431 (D.S.D. Jan. 13, 2020); John B.H. v. Saul, 4:20-CV-04080, 2021 WL 1192930 (D.S.D. Mar. 30, 2021); and Benthin v. Saul, 1:20-CV-01014, 2021 WL 2982719 at 7-9 (D.S.D. July 15, 2021)).  The remainder of plaintiff's submission presented the decisions of a magistrate judge[5] which rejected the Commissioner's arguments and citations to previous cases in support of the "national economy" argument.  Id. at pp. 2-4.

---

[5]In each of the cases where the final decision was made by the magistrate judge, the parties filed consents to jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

The "burden of production shifts to the Commissioner at step five."
Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004); see also Baker,
159 F.3d at 1144.  The Commissioner's finding must be upheld if it is
supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g);
Choate, 457 F.3d at 869; Howard, 255 F.3d at 580.

    Federal law provides:

> An individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work. For
> purposes of the preceding sentence (with respect to any individual),
> "work which exists in the national economy" means work which
> exists in significant numbers either in the region where such
> individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (emphasis added).  The Social Security regulations
define the determination of jobs in the national economy in the following
manner:

> Work exists in the national economy when there is a significant
> number of jobs (in one or more occupations) having requirements
> which you are able to meet with your physical or mental abilities
> and vocational qualifications.  Isolated jobs that exist only in very
> limited numbers in relatively few locations outside of the region
> where you live are not considered "work which exists in the national
> economy[.]"

20 CFR § 404.1566(b).  The regulation states that "jobs in the national
economy" means "in significant numbers either in the region where you live or
in several regions of the country."  Id. § 404.1566(d).  Since plaintiff "cannot

perform [his] past relevant work, the Commissioner bears the burden of showing that [he] could perform jobs that exist in significant numbers." Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997).

In Patton, this court pointed out the errors of defendant's "national economy" position. Patton, 2018 WL 1137057, at *10-14. Without specifically citing Patton, the Commissioner is reminded of the law as analyzed in that case on this issue.

"[T]he term 'region . . . is flexible' and can refer to 'the entire state' or to 'a particular area of the state.' " Vargas v. Colvin, No. CV 13-2116, 2013 WL 6254784, at *4 (C.D. Cal. Dec. 4, 2013) (citing Social Security Law and Practice § 43:137 (Dec. 2013); also referencing Harvey L. McCormick, Social Security Claims and Procedures § 8:55 (6th ed. 2011)). "[V]ocational experts who testify in social security disability cases concerning the availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." Barrett v. Barnhart, 368 F.3d 691, 692 (7th Cir. 2004) (referencing Fastner v. Barnhart, 324 F.3d 981, 985 (8th Cir. 2003) ("Even considering the narrow range of work Fastner was capable of performing, the ALJ found that the Commissioner had shown that there were a significant number of jobs that existed in the state [Minnesota] economy for Fastner."); other citations omitted).

12

"In practice, the principal significance of the 'other regions' language in the statute is to prevent the Social Security Administration from denying benefits on the basis of 'isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the applicant] live[s.]' " Barrett, 368 F.3d at 692 (citing 20 CFR § 404.1566(b).  As a practical matter, the court "should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the [VE's] testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988).  The issue is always "fact-intensive." Johnson v. Chater, 108 F.3d 178, 181 n.3 (8th Cir. 1997).

The United States Court of Appeals for the Eighth Circuit applied this standard several times.  In Jenkins, the court concluded 500 jobs in the St. Louis, Missouri, area were a significant number, particularly since claimant had 25 years of experience in the same line of work.  Jenkins, 861 F.2d at 1087.  In Johnson, the court observed:

> The [VE] noted that the addresser and document preparer jobs were sedentary, unskilled labor that Johnson could perform, and that there existed 200 jobs of addresser or document preparer in Iowa and 10,000 in the national economy.  The [VE] further testified that these figures were merely representative of a larger category of jobs that Johnson could perform, including telemarketing.  The [VE] did not give figures to describe the total number of unskilled, sedentary jobs in Iowa or the national economy.  However, at the time of the

13

> hearing before the ALJ, Johnson was engaged in one of the
> sedentary jobs that the [VE] said she was capable of performing,
> telemarketing.

Johnson, 108 F.3d at 180.  With this fact-intensive record the court concluded

"the Commissioner met her burden of showing that Johnson is not disabled

because the [VE's] testimony was sufficient to show that there exist a

significant number of jobs in the economy that Johnson can perform."  Id.

In Long v. Chater, 108 F.3d 185 (8th Cir. 1997), the court affirmed the

decision of an ALJ who found that "650 jobs [in Iowa] in the fields of

surveillance monitoring, addressing, and document preparation that exist in

Iowa, or one of the 30,000 such jobs that exists nationwide" constituted "a

significant number."  Id. at 188.  In Hall v. Chater, 109 F.3d 1255 (8th Cir.

1997), the court upheld an ALJ's decision because 1,045 receptionist jobs and

5,227 cashier jobs, "when added to the 218 order clerk and 122 information

clerk jobs [in the state of Arkansas] . . . constitute a significant number of jobs

available to Hall."  Id. at 1259 (referencing Jenkins, 861 F.2d at 1087).  The

court concluded "[t]here is no evidence to give us pause in concluding that the

ALJ used common sense in applying the significant numbers requirement to

Hall's particular factual situation."  Id. at 1260 (referencing Johnson, 108 F.3d

at 180; Long, 108 F.3d at 188-89; Jenkins, 861 F.2d at 1087).

In Osborne v. Barnhart, 316 F.3d 809 (8th Cir. 2003), the court found

3,000 assembly jobs, when added to 5,400 cleaning and janitorial jobs,

14

390 packer and wrapper jobs and 1,000 jobs as a stock handler all in the state of Missouri "far exceed levels . . . considered sufficient to constitute a 'significant number.' " Id. at 812 (referencing Hall, 109 F.3d at 1259; Jenkins, 861 F.2d at 1087).

With this Eighth Circuit guidance, the court in Patton gathered the rulings of a number of courts which each made specific reference to the number of jobs available in a plaintiff's state of residence as being significant at step five.[6]

> Rogers v. Barnhart, No. CIV. 4-02-CV-10090, 2003 WL 22052204, at *3 (S.D. Iowa Mar. 6, 2003) (surveillance monitor, 25,000 jobs nationally and 300 jobs in Iowa);
>
> Jackson v. Astrue, No. 4:07CV00796, 2008 WL 2783474 (E.D. Ark. July 15, 2008) (pharmacy technician, 267,000 jobs nationally and 2,370 in Arkansas; security guard, 994,220 positions in the United States and 6,240 in Arkansas; file clerk I or II, with 230,000 jobs nationwide and 1,950 in the state; teacher's aide, with 105,000 jobs in the United States and 722 in Arkansas);
>
> Murphy v. Astrue, No. 8:09CV89, 2009 WL 3763673, at *11 (D. Neb. Nov. 9, 2009) (330 order caller and 175 assembler positions in Nebraska);
>
> Olatubosun v. Astrue, No. 8:09CV376, 2010 WL 3724819, at *15 (D. Neb. Sept. 17, 2010) (document preparer, 6,600 jobs nationally and 350 jobs in Nebraska and a three state region (jointly "region"); cutter and paster, 5,500 jobs nationally and 200 jobs in the region; change account clerk, 17,000 jobs nationally and 1,200 jobs in the region.  Plaintiff notes that, "assuming equal distribution" of jobs among the four states included in the region, there are only approximately 437 suitable jobs available to him in Nebraska.

---

[6]The court limits this list to those cases which have national or regional job numbers reasonably comparable to the numbers acknowledged to exist in this case.

"[T]o the extent that the Plaintiff suggests that 437 jobs is [sic] insufficient as a matter of law, his argument must be rejected.");

Slavicek v. Astrue, No. CIV. 09-2432, 2010 WL 5421444, at *21 (D. Minn. Dec. 2, 2010), report and recommendation adopted, No. CIV. 09-2432, 2010 WL 5421341 (D. Minn. Dec. 23, 2010), aff'd sub nom. Slavicek v. Colvin, 527 Fed. Appx. 590 (8th Cir. 2013) (500 jobs in the state of Minnesota);

Gustafson v. Astrue, No. CIV. 10-4962, 2011 WL 6219641, at *8 (D. Minn. Nov. 29, 2011), report and recommendation adopted, No. CIV. 10-4962, 2011 WL 6218211 (D. Minn. Dec. 14, 2011) (order clerk, 1,300 jobs exist in the state of Minnesota. "Therefore, even assuming only for the sake of argument that the order clerk job was found to be inconsistent with the DOT, the Plaintiff would still be able to perform another job existing in significant numbers in the regional economy.");

Ferro v. Astrue, No. 10-2190, 2012 WL 3160357, at *6 (W.D. Ark. Aug. 3, 2012) (crossing guard, 20,000 nationally and 70 in the state of Arkansas; surveillance systems monitor, 27,000 jobs nationally and 600 in Arkansas. The magistrate judge concluded "[w]hile the number of jobs available as a crossing guard [70] would be problematic the number of jobs available as a surveillance system monitor [600] would certainly meet the test.")

Applegate v. Colvin, No. 4:12CV3029, 2013 WL 1222124, at *15 (D. Neb. Mar. 25, 2013) (610 jobs in Nebraska);

Wilson v. Colvin, No. 12-3054, 2013 WL 3230252, at *6 (W.D. Ark. June 26, 2013) (dishwasher, 191,000 jobs nationally and 1,600 jobs regionally; janitors and cleaners, 161,483 jobs nationally and 1,300 jobs locally);

Welsh v. Colvin, No. C12-0102, 2013 WL 3338419, at *19 (N.D. Iowa July 2, 2013), aff'd, 765 F.3d 926 (8th Cir. 2014) (330 jobs in Iowa constituted "a significant number of jobs in the national economy.");

Weaver v. Colvin, No. 4:12CV00220, 2013 WL 3716512, at *6 (E.D. Ark. July 11, 2013) (74 surveillance system monitoring jobs, 177 escort vehicle driver jobs, and 172 document preparer jobs all in the state of Arkansas);

16

<u>Whited v. Colvin</u>, No. 4:12-CV-3158, 2013 WL 3897754, at *4 (D. Neb. July 26, 2013) (usher, 30,000 jobs nationally and 500 jobs in Nebraska; furniture rental consultant, 20,000 nationally, 200 jobs in Nebraska; and livestock sales representative, 75, 000 jobs nationally and 5,000 positions in Nebraska);

<u>Brown v. Colvin</u>, No. 4:12CV3260, 2014 WL 200234, at *19 (D. Neb. Jan. 16, 2014) (79,280 jobs nationally and 500 jobs in Nebraska);

<u>Brown v. Colvin</u>, No. 4:13CV3042, 2014 WL 1218664, at *9 (D. Neb. Mar. 24, 2014) (850 jobs in Nebraska);

<u>Partain v. Colvin</u>, No. 4:13CV000168, 2014 WL 5524408, at *5 (E.D. Ark. Oct. 31, 2014) (production assembler, 27,800 jobs nationally and 368 jobs in Arkansas; machine tender, 19,886 jobs nationally and 224 jobs in Arkansas; hand packer, 21,485 jobs nationally and 197 jobs in Arkansas);

<u>Fusher v. Colvin</u>, No. 2:14-CV-02223, 2015 WL 4038892, at *6 (W.D. Ark. July 2, 2015) (machine tender, 16,500 jobs nationwide and 220 jobs in Arkansas; assembler, 22,100 jobs nationally and 182 jobs in Arkansas; inspector, 4,000 jobs nationally and 50 jobs in Arkansas);

<u>Lenderman v. Colvin</u>, No. 3:14-CV-00245, 2015 WL 4988278, at *4 (E.D. Ark. July 29, 2015) (silver wrapper, 107,457 jobs nationally and 846 jobs in Arkansas; small products assembly, 1,427 jobs nationally and 27 jobs in Arkansas);

<u>Gholston v. Colvin</u>, No. 14-CV-2064, 2015 WL 6167824 (N.D. Iowa Oct. 21, 2015) (document preparer, 32,700 jobs nationally and 350 jobs in Iowa; addresser, 25,000 nationally and 200 positions in Iowa) report and recommendation adopted, 2015 WL 6167824, at *23 (N.D. Iowa Oct. 21, 2015) ("the ALJ's conclusion that a significant number of jobs that Gholson can perform exist in the national or regional economy is supported by substantial evidence on the record."); and

<u>Farnsworth v. Berryhill</u>, CIVIL NO. 16-5228, 2017 WL 3367115, at *5 (W.D. Ark. Aug. 4, 2017) (fishing reel assemblers, 58 jobs in Arkansas, 3,036 nationally; motor polarizer, 130 jobs in Arkansas and 4,839 nationally; cuff folder, 106 jobs in Arkansas and 3,916 nationally).

Other cases in the region express concern when no state or regional job numbers were provided by the VE.

> Heins v. Saul, No. 19-CV-2043, 2020 WL 6052583, at *12 (N.D. Iowa June 11, 2020), report and recommendation adopted, 2020 WL 4369450 (N.D. Iowa July 30, 2020) ("I find that 5345 jobs in the national economy is not a significant number of jobs, especially where the number of jobs available in the regional or state economy is unknown."); and

> Griffin v. Saul, No. 18-CV-85, 2019 WL 8499518, at *8 (N.D. Iowa Nov. 21, 2019), report and recommendation adopted, 2020 WL 733886 (N.D. Iowa Feb. 13, 2020), rev'd and remanded sub nom, Griffin v. Saul, No. 20-1784, 2021 WL 4772439 (8th Cir. June 3, 2021) ("I find that 7800 jobs in the national economy is not a significant number of jobs, especially where the number of jobs available in the regional or state economy is unknown.") (reversal order unrelated to this issue).

Other circuit courts resolve the issue of significant number of jobs by looking at a state or an area smaller than an entire state.  See Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 jobs in a nine-county area, including Dayton, Ohio, constituted a significant number); Barker v. Secretary of Health & Human Services, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 positions in the Los Angeles/Orange County area were within the parameters of a significant number of jobs); Trimiar v. Sullivan, 966 F.2d 1326, 1330-32 (10th Cir.1992) (while refusing to draw "a bright line," the court found 850-1,000 potential jobs in Oklahoma were a significant number of jobs); Lee v. Sullivan, 988 F.2d 789, 792 & 794 (7th Cir. 1993) (1,400 jobs in the greater Milwaukee metropolitan area constituted "a significant number of jobs.").

18

Several of the Commissioner's citations did not address the specific issue before the court. The Commissioner's citation to Gutierrez fails to acknowledge the VE testified claimant "could perform 2,500 jobs in California and 25,000 jobs in the nation." Gutierrez, 740 F.3d at 521. The Gutierrez court was not asked to rule on whether *only* national jobs satisfied defendant's burden at step five. The same misrepresentation of the fact intensive nature of the issue occurred by defendant's reference to Takila. In that case, claimant "could perform at least two jobs that are meaningfully available locally (200 jobs) and nationally (6000)." Taskila, 819 F.3d at 906. In Whitehouse, the question was whether the code numbers of the Department of Transportation ("DOT") were sufficiently similar to the codes used by Job Service to be "reliable job information." Whitehouse, 949 F.2d at 1007. "There is no requirement that a vocational expert correlate the DOT titles with the Job Services summaries. The expert is only required to state his opinion as to the number of jobs available in the national economy to a person with the applicant's residual functional capacity, age, work experience, and education." Id. The Commissioner's arguments are suspect when the cited cases do not hold up to close examination.

Decisions of two district court judges and a magistrate judge of the District of South Dakota have dispelled the Commissioner's continued citation to the same case authority rejected in previous cases before the court. See, i.e., Patton, 2018 WL 1137057, at *10-14; Patrick, 2019 WL 3824254, at *44; Viessman, 2020 WL 133431, at *28; Benthin, 2021 WL 2982719, at *7-8.

19

In March 2019, the <u>John B.H.</u> court rejected the Commissioner's citation

to <u>Weiler</u>.

> In <u>Weiler</u>, the claimant appealed the ALJ's unfavorable decision on
> the basis that the ALJ erroneously concluded that there were
> a significant number of jobs in the economy the claimant could
> perform. . . . Specifically, the claimant asserted the jobs the VE
> testified to were actually incompatible with his RFC. . . . The Eighth
> Circuit rejected this argument and, without going into the details of
> the other three jobs the VE testified about, noted the VE testified
> that there were 32,000 surveillance monitor jobs in the national
> economy. . . . The other three jobs were deliverer, locker room
> attendant, and arcade attendant. . . .
>
> Contrary to the Commissioner's representation, the Eighth Circuit
> did not find the 32,000 surveillance monitor jobs to be a significant
> number of jobs in the economy which the claimant could perform.
> Instead, in holding that the jobs the VE testified to were compatible
> with the claimant's RFC, the court found that the VE's
> testimony—which also included testimony about the number of
> deliverer, locker room attendant, and arcade attendant jobs . . . was
> substantial evidence of a significant number of jobs in the economy
> the claimant could perform.

<u>John B. H.</u>, 2021 WL 1192930, at *36 (internal citations omitted).  With this

clarification, the court warned the Commissioner that the citation to <u>Weiler</u> was

improper.  "[N]ot only is the sentence from <u>Weiler</u> quoted by the Commissioner

mere dicta, but also the factual representation the Commissioner made is

untrue. . . . [T]he holding in <u>Weiler</u> is irrelevant to the issue of whether the

Commissioner failed to meet its burden at step five in this case."  <u>Id.</u>  "[T]he law

does require the Commissioner to show that there are a substantial number of

jobs in the national economy, meaning jobs that are in the region where the

claimant lives or several other regions of the country.  The Commissioner's

argument that it does not is tantamount to asking the court to authorize [the agency's] knowing deviation from the law.  The court rejects this request."  Id.

In August 2019, Patrick again emphasized the deficiency in the defendant's argument.  "The Commissioner cites several cases which simply do not answer the question.  Some of the cases merely parrot the language of the statute—'national economy'—without discussing what that term means under circumstances where the number of jobs was not a contested issue."  Patrick, 2019 WL 3824254, at *44 (referencing Weiler, 179 F.3d at 1110-11; Whitehouse, 949 F.2d at 1007; other references omitted).  The Patrick court ultimately concluded:

> '[N]ational economy' does not mean 'nationally.'  Instead, at Step 5, the ALJ must find that jobs the claimant can do exist in substantial numbers in the claimant's own 'region' (something less than the whole nation), or in 'several regions' (several parts that, together, consist of something less than the whole nation). . . . The VE did not testify to numbers of jobs existing in Ms. Patrick's region or in 'several regions,' so the testimony fails to provide support for the ALJ's step five determination.

Id., 2019 WL 3824254, at *45 (citing 42 U.S.C. § 423(d)(2)(A); 20 CFR § 1566(b)).  The court continued this line of analysis in January 2020.  Viessman, 2020 WL 133431, at *28 (same).

In July 2021, United States District Judge Charles B. Kornmann adopted the same analysis of the Commissioner's arguments made in earlier cases.

> While the Weiler court clearly approved of a step five analysis that was supported by only VE testimony based on the DOT and identifying national job numbers, the question of whether such

21

> testimony was sufficient was not squarely presented to the panel.
> Weiler was arguing that he was not actually capable of performing
> the jobs identified by the VE in his case.  The Eighth Circuit was not
> called to answer the question of whether the ALJ must identify the
> regions of the country in which the identified jobs exist.

Benthin, 2021 WL 2982719, at *7.  The court concluded:

> It is the responsibility of the Commissioner at step five to identify
> jobs which the plaintiff can perform despite her disability and which
> exist in substantial number either in the region in which she lives
> or in several regions of the country.  A citation to national numbers
> alone does not suffice to meet that burden; both national and
> regional numbers must be cited.

Id., 2021 WL 2982719, at *8.

Based on this analysis, the court concludes, again, that at step five the

Commissioner is required to identify the number of jobs in plaintiff's region or

in several regions of the country to satisfy the national economy element of

§ 423(d)(2)(A).  The court finds an error of law was committed.  Smith, 982 F.2d

at 311.

The Commissioner argued plaintiff must show how "any alleged error

was harmful."  (Docket 21 at p. 9).  If the ALJ adopted the VE's testimony

regarding the number of tower crane operator jobs existed in the national

economy and that number fails to satisfy the Commissioner's burden of proof

under § 423(d)(2)(A), then the harm to plaintiff is obvious.  Plaintiff would be

unlawfully deprived of Social Security benefits.

The court finds the absence of evidence to support the ALJ's finding of a

significant number of jobs being available to plaintiff in this region or several

regions of the country "fairly detracts from that decision."  Reed, 399 F.3d at

22

920.  The court finds the ALJ's decision is not supported by substantial

evidence.  42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869 (8th Cir. 2006); <u>Howard</u>,

255 F.3d at 580.

The court may affirm, modify, or reverse the Commissioner's decision,

with or without remand to the Commissioner for a rehearing.  42 U.S.C.

§ 409(g).  When an error exists in an administrative determination, "the proper

course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (citations

and quotations omitted).

Reversal of the Commissioner's decision of April 8, 2020, is necessary to

permit the agency to receive evidence limited to the clarification of the number

of tower crane operator jobs in the plaintiff's region or several regions of the

country, if any, pursuant to 42 U.S.C. § 423(d)(2)(A).  Remand shall be

pursuant to sentence four of 42 U.S.C. § 405(g).

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiff's motion (Docket 19) is granted.

IT IS FURTHER ORDERED that the defendant's motion (Docket 20) is

denied.

IT IS FURTHER ORDERED that the case is reversed and remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Dated February 23, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

24